Essex County Court of Common Pleas.

BACHMEIER & COMPANY, INCORPORATED, PLAINTIFF, v. HAROLD SEMEL AND NATIONAL SURETY COMPANY, A CORPORATION, DEFENDANTS.

Decided November 9, 1932.

For the plaintiff, *James R. Stewart, Jr.*

For the defendant National Surety Company, *Harry Silverstein.*

HARTSHORNE, J. This is on motion to strike the answer of defendant National Surety Company and for summary judgment. Defendant Semel has permitted judgment to go against him by default. Voluminous affidavits have been submitted on both sides, showing the facts to be substantially undisputed as follows:

On December 4th, 1928, Semel was appointed a constable of the town of Irvington for a term of three years from December 22d, 1928. Purporting to act as such, and within said period, Semel collected on execution from the Orange District Court, issued at the instance of Bachmeier & Company, the sum of $216.84, $75 of which he has satisfied to Bachmeier & Company. Thereafter, he gave them a check for $131, which he stopped payment on and has refused to make good. Meanwhile, on October 22d, 1929, the Irvington town clerk wrote him that, as he appeared to be living in Newark and not voting in Irvington, he would appear to be

disqualified to act as constable and his name was therefore "automatically dropped from the list of constables." But no action was taken, either by the town commissioners or by the commissioner of public safety, in charge of the police authorities of the town, to remove or drop Semel as constable. Semel filed no bond with the town for the year 1930, whether because the town clerk refused to receive it or not is not stated, but did file it with the clerk of the Orange District Court with the National Surety Company as surety. On December 19th, 1930, Semel filed with the Irvington town clerk his constable's bond for the year 1931, with the National Surety Company as surety, conditioned for "faithfully and truly performing all the duties of his office" and to "pay over and account for all funds coming into his hands by virtue of his said office as constable as required by law." It is on this bond that suit is brought. This bond the town clerk returned to Semel December 26th, 1930, on the grounds that he had not qualified as a constable in 1930, since he had failed to file his bond for that year, and had become disqualified in 1929 for residing outside of Irvington. But again no action was taken by the town commissioners or the commissioner of public safety.

The question therefore is, on this motion, whether either the failure to file a constable's bond or residence outside of the town where appointed, prevents suit against the surety on the bond, in fact executed, for defalcations by the principal on the bond.

The Constables act (*Comp. Stat.* 1910, *Constables, p.* 1530) requires a constable to file a bond with the town clerk and, if he shall neglect to renew same "within thirty days after the expiration of each yearly term, his office shall become vacant * * *." Section 13. By the Municipalities act, as amended (*Pamph. L.* 1920, *p.* 248, § 18), it is provided that "whenever any officer of any municipality shall cease to be a *bona fide* resident therein * * * a vacancy in the office held by any such person shall immediately exist, and such person shall not exercise any of the duties of the office theretofore held by him; and such municipality by and through

its proper authority shall immediately proceed to fill such vacancy in the manner and form prescribed by law for the filling of any such vacancy * * *."

While these statutes seem quite definite, the rule has long been accepted in New Jersey and elsewhere throughout the United States on the grounds of public policy that the mere failure to file an official bond does not work a forfeiture *ipso facto,* nor vacate the office, but merely makes the title defeasible until forfeiture is pronounced in due form, so that all acts of such officer prior to such pronouncement of forfeiture are valid as to the public and third parties. To this effect see the case of *Clark* v. *Ennis,* 45 *N. J. L.* 69, where in a learned opinion collating the authorities from many jurisdictions the Supreme Court says: "This rule is founded in public policy and has the sanction of universal approbation by the courts as absolutely essential to the protection of the citizen who is compelled to deal with public officers * * *. In virtue of his election and induction into office, the sheriff [here constable] enters upon a term of three years. *Prima facie,* he is entitled to perform the functions of the office for that full period of time and to remain in office for the term under a color of title, although he may have done or omitted some act the consequence of which is a forfeiture of his office. Of the existence of a cause of forfeiture, third persons and the public must be ignorant for a time at least, and it would be in the last degree unjust to visit upon them a punishment for the delinquencies of the officer."

This rule was applied in the face of a statute fully as strong as that applying to constables, such statute providing, "that if any sheriff * * * shall neglect * * * to give bond * * * the office of such sheriff shall immediately expire and be deemed and taken to be vacant and if such sheriff shall thereafter presume to execute the office of sheriff, then all such his acts and proceedings done under color of office shall be absolutely void."

Not only would this same principle of law seem to apply to the matter of residence as clearly as to the matter of filing a bond, but we find in the early case of *State* v. *Anderson,*

1 *N. J. L.* 36 *[318] that the court has so held, the statute there in issue providing that non-residence of the sheriff of the county would make him ineligible for the office, the suit there being apparently not one involving the rights of third parties, but a proceeding directly against the sheriff. In all events, the court there found the sheriff, whose ineligibility in fact was admitted, nevertheless to be "sheriff *de facto;* and we think that all his acts which were performed in discharging the duties of his office were good." In view of such settled construction of statutory provisions substantially identic with the present, the court is constrained to find that, despite Semel's non-residence at the time of his defalcation and his failure to renew his bond previously thereto, he still remained constable with a defeasible title or constable *de facto,* whose acts would be as fully valid as to all third persons, including an execution creditor such as Bachmeier & Company here is and the defendant surety company, as if Semel had been constable *de jure.*

The fact that Semel may have misrepresented the facts to the surety company in obtaining the bond is immaterial as to the rights of the execution creditor against the surety on the bond, the remedy for the surety being an action against the person who made the false representations.

Accordingly, defendant's answer will be stricken, but, in view of the reservation of motions therein, summary judgment will not be entered for the plaintiff until such motions are disposed of on application to this court on notice.